# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

DEBORAH FERGUSON, et al.,

       Plaintiffs,

vs.

EXIDE TECHNOLOGIES,

       Defendant.

No.  C18-2044-LTS

**ORDER ON PLAINTIFFS' MOTION FOR CONDITIONAL CLASS CERTIFICATION**

---

## I.  INTRODUCTION

This case is before me on a motion (Doc. No. 16) for conditional collective action, or class, certification pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (FLSA), filed by plaintiffs Deborah Ferguson, Andrew Clemen and Jeff Nolting. Defendant Exide Technologies (Exide) has filed a resistance (Doc. No. 23) and plaintiffs have filed a reply (Doc. No. 25).

Exide is a global manufacturer of lead-acid batteries, including automotive and industrial batteries, with its principal place of business located in Georgia.  Plaintiffs are citizens of Iowa who are, or have been within the past three years, hourly employees of Exide at its battery-manufacturing facility in Manchester, Iowa.  Plaintiffs allege that Exide has systematically not compensated them or other similarly situated employees for all hours worked.  This action was originally filed in the Iowa District Court for Delaware County on June 1, 2018.  Exide removed the case to this court on July 5, 2018, on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332, and federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

The state court petition asserts two claims.  In Count 1, plaintiffs allege that Exide violated §§ 206 and 207 of the FLSA by (1) failing to pay plaintiffs and other similarly situated employees for all hours of work they had performed and (2) failing to pay

overtime for work performed in excess of 40 hours a week. In Count 2, plaintiffs allege that Exide violated the Iowa Wage Payment Collection Law (IWPCL), Iowa Code § 91A by failing to pay plaintiffs and similarly situated employees their agreed upon hourly wages.[1]

Plaintiffs seek (1) conditional class certification and permission to send their proposed notice and consent form to potential opt-in plaintiffs, (2) an order requiring Exide to provide plaintiffs with the names, last-known addresses and dates of employment for potential class members, (3) the tolling of the statute of limitations from July 27, 2018, until Exide provides the names and addresses of potential class members and (4) an opt-in period of at least three months. The proposed class of plaintiffs is "all individuals who worked or are working for defendant Exide Technologies in an hourly capacity" at Exide's Manchester, Iowa, facility at any time since June 1, 2015, who were eligible for overtime pay and did not receive overtime pay. Doc. Nos. 16-1 at 2; 16-4 at 1. Plaintiffs estimate the proposed class of employees to be over 300 individuals.

## II.     RELEVANT FACTS

Exide's Manchester, Iowa, facility is divided into departments, which are in turn divided into workstations. Hourly employees are assigned to various workstations based on production demands and may be assigned to multiple workstations during a single shift. Exide requires employees who work in the production area to wear uniforms designed to protect them during their shifts. Some employees must also wear hard hats, hairnets or ear plugs. Employees who are required to wear uniforms are not allowed to take their uniforms home at the end of the work day. Employees must shower in the Exide locker room at the end of the work day.

---

[1] Plaintiffs argue only for collective action certification under the FLSA. Class certification under Federal Rule of Civil Procedure 23 for the IWCPL claim is not at issue here.

When employees first arrive at the plant, they must punch in with individual time cards at the Main Clock. From there, they are to go to the locker room to don their uniform, work boots and safety glasses. They then make their way to their work stations where they punch in a second time at the Work Area Clock. Some employees must don additional safety equipment when they arrive at their work station. Ten minutes before the end of their shifts, employees are expected to punch out at the Work Area Clock and return to the locker room to doff their work clothing and protective gear and shower. When they leave the plant, employees must punch out a second time at the Main Clock.

Exide states that employees are required to be punched in, or on the clock, when changing clothes, showering, washing up or performing any duties associated with the job. Both parties agree that employees are paid from the beginning of their scheduled shift until the end of their scheduled shift. Exide also states that it has a process for employees to correct any payroll errors or alert Exide to overtime work. Plaintiffs allege that they and other employees engaged in donning and doffing activities outside of their scheduled shift and hourly pay time and were not compensated for those activities.

### III. LEGAL STANDARDS

The FLSA allows an employee to bring an action on behalf of himself and any other "similarly situated" employees. 29 U.S.C. § 216(b). Class members must opt in to be considered parties of a collective action under the FLSA. *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 890 (N.D. Iowa 2008). When class certification is appropriate, the court has discretion to facilitate notice to potential plaintiffs of the collective action. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989).

Section 216(b) does not define "similarly situated." *Salazar v. Agriprocessors, Inc.*, No. 07-CV-1006-LRR, 2008 WL 782803, at *4 (N.D. Iowa March 17, 2008). The Eighth Circuit has stated that plaintiffs may be similarly situated when "they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *Bouaphakeo v.*

3

*Tyson Foods, Inc.*, 765 F.3d 791, 796 (8th Cir. 2014) (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009)). Factors a court may consider when determining whether employees are similarly situated include "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Id.* (quoting *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001)).

This court has previously followed a two-step approach to determine whether class certification is appropriate. *Bouaphakeo*, 564 F. Supp. 2d at 890–91. This approach distinguishes between conditional class certification, which is generally done at the "notice stage," and final class certification, which is done after discovery is mostly complete. *Id.* at 891. At both stages, the burden remains on the plaintiff. *Id.* The parties do not dispute that the first step, conditional certification, is applicable here.

At the notice stage, "the plaintiffs 'need merely provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist.'" *Salazar*, 2008 WL 782803 at *5 (quoting *Dietrich v. Liberty Square, L.L.C.*, 230 F.R.D. 574, 577 (N.D. Iowa 2005)). The plaintiff's burden at this stage is lenient and "does not require existing plaintiffs to 'show that members of the conditionally certified class are actually similarly situated.'" *Bouaphakeo*, 564 F. Supp. 2d at 892 (quoting *Fast v. Applebee's Int'l, Inc.*, 243 F.R.D. 360, 363 (W.D.Mo.2007)). However, "plaintiffs must present more than mere allegations; i.e., some evidence to support the allegations is required." *Id.* (quoting *Young v. Cerner Corp.*, 503 F.Supp.2d 1226, 1229 (W.D.Mo.2007)). The supporting evidence should show that other similarly situated individuals wish to opt in, because "'[o]thers' interest in joining the litigation is relevant to whether or not to put a defendant employer to the expense and effort of notice to a conditionally certified class of claimants.'" *Id.* (quoting *Parker v. Rowland Express, Inc.*, 492 F.Supp.2d 1159, 1164–65 (D.Minn.2007)). Other factors include "whether affidavits of potential plaintiffs have been submitted, whether there is evidence of a

4

widespread discriminatory plan, and whether, as a matter of sound management, a manageable class exists." *Id.* (quoting *Jimenez v. Lakeside Pic–N–Pac, L.L.C.*, 2007 WL 4454295, at *2 (W.D. Mich. Dec. 14, 2007)). Essentially, the plaintiffs' burden at this first step "requires nothing more than substantial allegations" that the putative class members were "victims of a single decision, policy or plan." *Id.* (quoting *Young*, 503 F.Supp.2d at 1229)).

## IV.    ANALYSIS

### A.    *Conditional certification*

#### 1.    *Parties' arguments*

Plaintiffs allege that they and other hourly employees were systematically denied pay for hours that should have been counted as time worked because Exide pays its hourly employees from the start time of their shifts and not from the time the employees first punch in at the Main Clock or begin tasks "integral and indispensable" to their principal employment. Doc. No. 16-1 at 4–5. These tasks include donning uniforms and protective equipment, walking from the locker room to their workstations and back, doffing their uniform and showering. *Id.* at 5. Plaintiffs contend there is a "gap" between Exide's written policy and its practice. Doc. Nos. 16-1 at 2; 25 at 2.

Exide argues that plaintiffs have not shown they or other putative collective members were subject to a single, unlawful decision, policy or plan. Doc. No. 23 at 3. Exide claims that it pays employees from the start to the end of their scheduled shifts and has a written policy that all employees must be on the clock when donning and doffing uniforms, walking between the locker room and work area and showering at the end of their shift. *Id.* Exide argues that plaintiffs have merely made allegations of deviations

Case 6:18-cv-02044-LTS-MAR    Document 26    Filed 01/31/19    Page 5 of 11

from otherwise lawful practices and that even if there was uncompensated overtime work, plaintiffs have not shown that Exide knew about those deviations.[2] *Id.* at 4, 9.

## 2. Discussion

According to Exide's Hourly Employee Handbook, employees must be punched in or "on the clock" when "changing clothes, showering, washing up, or performing any duties associated with [their] job." Doc. No. 16-2 at 3. It instructs employees to bring any payroll errors to the attention of the Controller or HR Manager. *Id.* Employees are not allowed to be on Company premises earlier than 30 minutes before their scheduled start time and cannot remain on the premises longer than 30 minutes after their scheduled quit time. *Id.* at 4. "All employees are allocated paid wash-up times which must be taken for their intended use." *Id.* Employees are required to shower, shampoo and change clothes at their shift's end. *Id.*

Greg Brandt, the plant controller at the Manchester facility, testified by deposition (Doc. No. 16-3) on November 6, 2017, and provided a declaration (Doc. No. 23-1) dated August 23, 2018. Brandt is in charge of finances, including payroll and accounts payable.

---

[2] However, whether plaintiffs can prove that Exide knew about any employees who were not properly compensated does not affect whether a class should be conditionally certified. The only question is whether there are sufficient facts from which to determine that a class of similarly situated plaintiffs exist. In fact, Exide's citations on this point all relate to either a motion for summary judgment, appeal after a final judgment, or a judgment as a matter of law. *See Hertz v. Woodbury Cty., Iowa*, 566 F.3d 775, 782 (8th Cir. 2009) (appeal of denial of motion for summary judgment and judgment as a matter of law); *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 879 (6th Cir. 2012) (motion for summary judgment); *Allen v. City of Chicago*, 865 F.3d 936 (7th Cir. 2017) (appeal after final judgment); *Saleen v. Waste Mgmt., Inc.*, 649 F. Supp. 2d 937, 940 (D. Minn. 2009) (does not discuss the knowledge element); *Burch v. Qwest Comc'ns Int'l, Inc.*, 677 F. Supp. 2d 1101, 1131 (D. Minn. 2009) (knowledge element discussed with respect to the summary judgment motion); *Cage v. Multiband, Inc.*, No. 1:12CV98SNLJ, 2015 WL 687120, at *10 (E.D. Mo. Feb. 18, 2015) (motion for summary judgment); *Shaunpen Zhou v. Int'l Bus. Machs. Corp.*, No. 15-CV-1027-LRR, 2017 WL 1217195, at *17 (N.D. Iowa March 31, 2017) (motion for summary judgment). Exide is free to address the knowledge element in an appropriate motion, but that element has no impact on class certification.

Doc. No. 16-3 at 3. He describes the typical process for assembly workers arriving at work as follows: an employee comes into the building, clocks in, gets dressed and prepares to go to his or her work area. *Id.* at 5; Doc. No. 23-1 at 2–3. After coming into the building and clocking in at the Main Clock, employees may get coffee or engage in other personal activities before their shift starts. Doc. No. 23-1 at 2. For a shift beginning at 10:00 p.m., Brandt indicates that at 10:00 p.m. the employee would be in the locker room preparing to go to the work area. Doc. No. 16-3 at 3. The employee should be at his or her work station punching in at the Work Area Clock by 10:06 p.m. *Id.* He states that pay status starts when the designated shift time starts, not necessarily when the employee punches in. *Id.* The shift schedules allot time for changing and walking to work stations and Exide requires all donning and doffing activities occur on the paid shift times. Doc. No. 23-1 at 3.

At the end of their shifts, Brandt indicates that employees must clock out at the workstation then go to the locker room, shower, change, and then punch out at the Main Clock. Doc. No. 16-3 at 6. He states that employees are still in pay status after punching out at their workstation and remain so until they punch out at the Main Clock. *Id.* According to Brandt, employees receive ten minutes within their shift time to shower and dress. *Id.* If showering and changing takes longer than ten minutes they do not remain in pay status until they punch out. *Id.* All employees are paid through the end of their shift time. Doc. No. 23-1 at 3. He states that he is not aware of any hourly employees exceeding the allotted time for these activities. *Id.* at 4.

While the standard for class certification is lenient, the plaintiffs must present more than allegations; they must present some evidence to support the allegations. Contested allegations in a complaint will not be considered evidence of whether or not there are similarly situated plaintiffs. *See Salazar*, 2008 WL 782803, at *6. Unsupported assertions of widespread violations are not sufficient to meet the burden of proof at this stage. *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003).

7

Here, the only evidence plaintiffs have provided to show the existence of a single, unlawful policy is the Hourly Employee Handbook and Brandt's deposition. While plaintiffs have also cited the consent forms of thirteen additional employees, these consent forms simply state, "[d]uring the time period I was employed by Exide Technologies, I worked in excess of forty (40) hours in given workweeks, but was not paid overtime compensation for all time worked in excess of 40." Doc. Nos. 1-1 at 20, 21, 25, 27; 6-1; 6-2; 6-3; 6-4; 6-5; 6-6; 6-7; 12-1; 12-2. They provide no factual details about what the employees did to complete more than forty hours. There are no factual statements about donning and doffing uniforms or needing more than the time allotted to do so. *See Saleen v. Waste Mgmt., Inc.*, 649 F. Supp. 2d 937, 941 (D. Minn. 2009) ("[T]he mere fact that a small fraction of employees allege that they did not receive compensation to which they were entitled provides almost no evidence that the *reason* that these employees were underpaid was because of an unlawful companywide policy.").

Plaintiffs also cite to affidavits attached to their original complaint. However, the only affidavits presented are those of the named plaintiffs themselves, which simply state that "to the best of my knowledge everything contained within [the petition] is true." Doc. No. 1-1 at 11, 13, 15. Neither the affidavits nor the consent forms indicate that employees were unable to complete the donning and doffing activities within the time allowed or were instructed by Exide, despite the written policy, to engage in such activities outside of their scheduled shifts.

Courts that have conditionally certified a class alleging that a company failed to compensate employees for donning and doffing activities had the benefit of a much-better detailed and developed factual record than what is available here. *See Busler v. Enersys Energy Prod., Inc.*, No. 09-00159-CV-W-FJG, 2009 WL 29989701, at *3 (W.D. Mo. Sept. 16, 2009) ("Plaintiffs have submitted thirty-three sworn affidavits from employees at the four plants in question, each alleging the same basic facts: (1) employees were required to don and doff protective clothing and equipment and/or shower as part of their job working at a battery plant; (2) employees were not compensated for donning/doffing

8

or showering; and, (3) after removing protective clothing and washing, the allotted lunch period did not provide employees sufficient time to eat."); *Wright v. Pulaski Cty.*, No. 4:09 CV 00065 SWW, 2010 WL 3328015, at *1 (E.D. Ark. Aug 24, 2010) ("Plaintiffs claim that the County requires PCRDF employees to report to work thirty minutes early."); *Ford v. Townsends of Ark., Inc.*, No. 4:08CV00509BSM, 2010 WL 1433455, at *4 (E.D. Ark. Apr. 9, 2010) (plaintiffs allege that employer's fixed amount of "plug time" for donning and doffing does not fully compensate employees for donning and doffing); *Ingersoll v. Farmland Foods, Inc.*, No. 10-6046-CV-SJ-FJG, 2012 WL 12897285, at *3 (W.D. Mo. Feb. 9, 2012) (plaintiffs asserted that the employees were instructed to be at their appointed workstation, prepared to work at their scheduled start time and had to engage in various activities before their could get to their workstation); *Knaak v. Armour-Eckrich Meats, LLC*, 991 F. Supp. 2d 1052, 1054 (D. Minn. 2014) (conditionally certifying a class where plaintiffs alleged they performed unpaid work before and after clocking in and out for shifts and provided declarations from nine employees who declared that they were told they need to begin their scheduled shifts with all required clothing and safety gear already on and need to arrive early for shifts); *Bowman v. Doe Run Res. Corp.*, No. 4:13 CV 2519CDP, 2014 WL 3579885, at *4 (E.D. Mo. July 21, 2014) ("According to the numerous affidavits" employees are required to put on protective gear before the start of their shift and spent 45 to 60 minutes per shift to perform these activities and were told they would not be paid for these activities).

According to Exide's admissions and the other evidence provided by the parties, the only policy alleged is one in which Exide pays its employees for donning and doffing activities during their shifts, requires that such activities be done only while on the clock and accounts time during the shift for performing such activities.  Plaintiffs argue that they and other employees punched in and began performing such tasks before their shifts started, and were not compensated for that time, but this allegation does not show a single, unlawful policy by Exide sufficient to certify the class.  *See Andersen v. Wells*

9

*Fargo Fin., Inc.*, No. 4:11-CV-00085, 2012 WL 12871958, at *4 (S.D. Iowa Feb. 6, 2012) ("Merely stating that the Defendants have a 'corporate practice' of not paying their employees for all the time they work does not convince the Court that the putative class can be meaningfully defined.").

As noted above, the record reflects that Exide employees may clock in up to 30 minutes before their scheduled shift. Between arriving at work and the start of their shift they are free to engage in personal activities. When their scheduled shift begins they are expected to begin doffing protective gear and make their way to their workstations. The handbook policy indicates that employees are expected to engage in those activities only when they are "on the clock," or on paid time. Brandt indicated that the shifts allot time to both don and doff protective clothing. The handbook indicates that asking an employee to work off the clock is prohibited. Doc. No. 16-2 at 3.

Plaintiffs simply allege that some employees were changing clothes before and after their scheduled shift times, despite the policy that prohibits such activity. There is no "gap" between the stated policy and Exide's practice, as plaintiffs claim (Doc. No. 25 at 2), because plaintiffs have provided no evidence that they could not complete the preparatory activities within the times allotted during their paid shifts, or that Exide encouraged or ordered employees to engage in those activities outside their alleged shifts in order to meet the time demands. *See Andersen*, 2012 WL 12871958, at *5 ("The Court cannot infer from the mere expectation that performance goals be met that an employer insists on employees to perform unpaid overtime."). Nor have plaintiffs alleged that they are required or expected to be at the Work Area clock before their shift starts.

As a whole, the facts of record do not show an unlawful written or unwritten policy. At most, there is an opportunity for individual employees to work outside their shift times, despite the fact that the policy forbids this conduct and the work shifts include time designated for changing and showering. This is not sufficient to show that a class of employees who are victims of an unlawful policy exists. Rather, this case will require

10

an individual analysis to determine whether a particular employee performed work activities outside the scheduled shift times. Plaintiffs have not provided a sufficient factual basis from which to conditionally certify a class.

**B.**     ***Proposed Notice to Potential Class Members and Statute of Limitations***

Plaintiffs also request that I approve the proposed notice to potential class members, order Exide to provide names and addresses of potential class members, toll the statute of limitations and allow an opt-in period of three months. Doc. No. 16-1 at 6–8. Because I find that conditional class certification should be denied, these requests will be denied.

## V.     CONCLUSION

For the reasons set forth herein, plaintiffs' motion (Doc. No. 16) for conditional class certification under 29 U.S.C. § 216(b) is **denied in its entirety**.

**IT IS SO ORDERED.**

**DATED** this 31st day of January, 2019.

_____
Leonard T. Strand, Chief Judge

11